# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5263 | DATE | 10/21/2003 |
| CASE TITLE | Wynne vs. Stevenson | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion to extend the date for pretrial conference is granted. Pretrial conference date of 10/21/03 at 11:00 a.m is stricken and re-set to 10/29/03 at 11:00 a.m. For the reasons stated in the attached memorandum opinion and order, RSI's motion for summary judgment is granted [42-1]. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 22 2003 date docketed | 54 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

EMILY WYNNE, )
)
    Plaintiff, )
)
v. ) No. 02 C 5263
)
LOUIS STEVENSON; ERIC M. BERMAN, P.C.; ) Judge John W. Darrah
ERIC BERMAN; LIFE INSURANCE COMPANY )
OF NORTH AMERICA; CIGNA; and RSI, )
)
    Defendants. )

**DOCKETED**
OCT 2 2 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Emily Wynne, filed suit against Defendants, alleging a violation of the Fair Debt Collection Practices Act ("FDCPA") and defamation. Plaintiff's defamation claim was subsequently dismissed without prejudice. Presently before the Court is RSI's Motion for Summary Judgment.

## BACKGROUND

RSI provides debt collection services for its clients, including CIGNA and Life Insurance of North America ("LINA"). (Def.'s 56.1(a)(3) Statement ¶ 1). LINA was a division of CIGNA Integrated Insurance Company that provided disability benefits for Plaintiff. (Id, ¶ 3). Eric Berman, P.C. was a third-party vendor retained by LINA to handle debt collection efforts where LINA and RSI were unsuccessful. (Id., ¶ 4).

From 1989 to 2001, Plaintiff was employed as a flight attendant for United Airlines. (Def.'s 56.1(a)(3) Statement ¶ 15). In 1998, Plaintiff underwent surgery to correct problems she had been experiencing with her feet. (Id., ¶ 16). Before undergoing the surgery, Plaintiff sought Worker's Compensation benefits to cover the expense of the surgery and any lost time that she may have

54

incurred due to the surgery. United Airline's Worker's Compensation carrier ultimately denied Plaintiff's request. (Id., ¶ 17).

Plaintiff proceeded with the surgery, which caused her to miss significant time from work. She also underwent at least two follow-up surgeries, which also caused her to miss more time from work. (Def.'s 56.1(a)(3) Statement ¶ 18). During this time, Plaintiff sought and received short-term disability benefits from her disability carrier, LINA. (Id., ¶ 19). In December 1999, Plaintiff began receiving long-term disability benefits of approximately $1,373.65 per month. (Id., ¶ 21).

On July 2, 1999, Plaintiff returned to work as a flight attendant for United Airlines. (Def.'s 56.1(a)(3) Statement ¶ 22). From July 1999 through August 2000, Plaintiff continued to accept long-term disability benefits despite the fact that she had returned to work. During this time, Plaintiff accepted approximately $12,000 in long-term disability benefits. (Id., ¶ 23).

On September 11, 2000, CIGNA/LINA contacted Plaintiff regarding the overpayment of long-term disability benefits and informed her that she would be responsible for paying back the overpayment. (Def.'s 56.1(a)(3) Statement ¶ 25). Pursuant to the terms of the service agreement between LINA and RSI, CIGNA/LINA turned the collection efforts over to RSI. (Id., ¶ 25). RSI contacted Plaintiff on several occasions and attempted to secure repayment of the overpayment debt. (Id., ¶ 26). Unable to obtain full payment of the debt from Plaintiff, RSI turned the collection efforts over to Eric Berman, P.C., the third-party vendor designated by CIGNA/LINA for such purposes, pursuant to the terms of the service agreement between RSI and CIGNA/LINA. (Id., ¶ 27).

In October or November of 2000, Plaintiff made arrangements with CIGNA for repayment of the debt whereby Plaintiff would make monthly payments in a minimum amount of $25.00 per month. (Plaint.'s 56.1(b)(3) Statement ¶ 6). Beginning in January 2001, RSI began receiving checks

in the amount of $50.00 from Plaintiff. RSI accepted the checks per instructions of CIGNA. (Id., ¶ 7; Def.'s Response to ¶ 7). RSI contacted Plaintiff via letters in January and February 2001. (Plaint.'s 56.1(b)(3) Statement ¶¶ 8-9). Copies of the January and February 2001 letters from RSI to Plaintiff were included in Plaintiff's personnel file at United Airlines and were provided to United Airlines by LINA. (Def.'s Response to Plaint.'s ¶ 10).

On April 3, 2001, Sam Berry of CIGNA reported to Dolores Kastel from the Life and Disability Department at United Airlines that "preliminary feedback indicates that there have been no agreements reached regarding a payment plan." (Plaint.'s 56.1(b)(3) Statement ¶ 13).

On June 25, 2001, RSI received a letter from Eric Berman's office advising that all amicable efforts to recover the overpayment had been exhausted because the Plaintiff refused to pay and recommended that the matter be referred to CIGNA's legal department. (Plaint.'s 56.1(b)(3) Statement ¶ 16). Eric Berman closed out Plaintiff's account in June 2001. The matter was then referred to CIGNA's legal department in July 2001. (Id., ¶ 17).

On June 27, 2001, RSI received a telephone call from Paul Davis of United Airlines. The RSI "history screen", a computerized record of the incoming call, reads:

> INCOMING CALL
> S/W PAUL DAVIS INFORMED ME HE IS FROM UNITED AIRLINES AND HE WANTED TO KNOW IF CX WAS KEEPING UP WITH HER PMT ARRANGEMENTS, , , INFORMED HIM I WOULD NOT BE ABLE TO PROVIDE HIM WITH THIS INFORMATION AGAINST THE FDCPA PROVIDING INFORMATION TO A THIRD PARTY ....... INFORMED HIM WE WOULD HAVE TO HAVE THE CX CONTACT ME AND INFORM ME I WOULD BE ABLE TO RELEASE INFORMATION REGARDING HER ACCT WHICH HAS GONE TO LEGAL

(Plaint.'s 56.1(b)(3) Statement ¶ 21; Def.'s Response ¶ 21). The note that states the file "has gone

3

to legal'"was an internal note for the RSI employee, Culeana Halim, a recovery specialist for RSI, and other RSI personnel and was not communicated to Davis. (Def.'s Response to Plaint.'s ¶ 21; Declaration of Culeana Halim).

In September 2001, RSI received a telephone call from Plaintiff's union representative, Tawni Major. RSI's record of this telephone conversations reads:

> INCOMING CALL
> RCD A CALL FRM A PERSON BY THE NAME OF TONNIE MAGOR ASSOC. OF FLIGHT ATTENDANCE CALL ON BEHALF OF CX. I ADV HER THAT I AM UNABLE TO S/W 3RD PARTY W/O AUTHORIZATION OF THE CX. SHE ASKED IF DEAN WEBLEY STILL WORKED HERE AND I SAID NO & I'M UNABLE TO GIVE YOU INFO ON HER & PERSONNEL IS NOT PRIVILEGE TO GIVE YOU INFO EITHER. SHE SAID SHE WILL CX W/ AUTHORIZATION TO S/W ME

(Plaint.s 56.1(b)(3) Statement ¶ 25; Def.'s Response ¶ 25).

In June 2002, Plaintiff filed the instant lawsuit, alleging that RSI communicated with United Airlines regarding Plaintiff's debt in violation of the FDCPA. (Def.'s 56.1(a)(3) Statement ¶ 29). Plaintiff has not produced any documentation evidencing an unlawful communication between RSI and United Airlines. (Id., ¶ 30). At her deposition, Plaintiff testified that she had no knowledge of any communications between RSI and United Airlines. (Id., ¶ 32; Plaint.'s Dep. p. 58).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d

4

997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff's allegations in Count I against RSI allege that RSI violated Sections 1692c(b) and 1692e(8) of FDCPA by communicating information about her debt to United Airlines.

Section 1692c(b) provides, in pertinent part:

> Communication with third parties. Except as provided in section 804 [15 U.S.C. § 1692b], without prior consent of the consumer given directly to the debt collector ... a debt collector may not communicate, in collection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Section 1692e(8) provides, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

"Communication" under the FDCPA is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. § 1692a(2).

Plaintiff contends that several "facts" demonstrate that RSI communicated with United

Airlines concerning her debt.[1] First, Plaintiff cites to Sam Berry's comment to Kastel on April 3, 2001, that "preliminary feedback indicates that there have been no agreements reached regarding a payment plan". However, Barry is an employee of CIGNA; and his comments do not show that such information was communicated by RSI.

Plaintiff also contends that the letters from RSI to her that were found within her personnel file at United Airlines evidence that RSI communicated her debt to United Airlines. However, the evidence shows that these letters were provided to United Airlines by LINA, not RSI.

Lastly, Plaintiff contends that the computerized records of RSI's telephone conversations evidences that RSI communicated information about her debt to United Airlines because it indicates that the matter "has gone to legal". However, it is uncontroverted that this information was input into the computer by the RSI employee as an internal note for the RSI employee and other RSI personnel and that it was not relayed to the United Airlines caller. Furthermore, the computerized records of these telephone calls show, contrary to Plaintiff's allegations, that RSI informed the callers that they could not answer any questions or discuss the matter with the callers.

Based on the above, Plaintiff has failed to demonstrate that any genuine issue as to any material fact exists as to whether RSI communicated information about Plaintiff's debt to United Airlines. Accordingly, RSI's Motion for Summary Judgment is granted.

---

[1] Plaintiff also, for the first time, alleges that summary judgment should not be granted for RSI because RSI is liable for its agent, Eric Berman, P.C. However, no such allegations appear in Plaintiff's Complaint; and Plaintiff cannot amend her Complaint through a response to the Motion for Summary Judgment. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Accordingly, this issue is not properly before the Court and is not addressed.

6

## CONCLUSION

For the reasons stated above, RSI's Motion for Summary Judgment is granted.

Dated: October 21, 2003

JOHN W. DARRAH
United States District Judge